IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DINE DEVELOPMENT CORPORATION
and NOVA CORPORATION,

    Plaintiff,

vs.                                                                                        No. CIV 17-0015 JB/KBM

ERIN FLETCHER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Application for Temporary Restraining Order, filed March 7, 2017 (Doc. 15)("TRO App."). The Court held a hearing on March 10, 2017. The primary issue is whether, pursuant to rule 65(b)(1) of the Federal Rules of Civil Procedure, the Court should grant Plaintiffs Dine Development Corporation and Nova Corporation a temporary restraining order ("TRO") enjoining pro se Defendant Erin Fletcher, the Plaintiffs' former employee, from proceeding with arbitration against the Plaintiffs before the American Arbitration Association ("AAA") until the Court holds a hearing and rules on the Plaintiffs' Application for Preliminary Injunction, filed January 17, 2017 (Doc. 3)("PI App."). For the reasons stated on the record at the hearing, the Court grants the TRO Application and enjoins Fletcher from proceeding with arbitration against Dine Corp. and Nova Corp. before the AAA until the Court holds a preliminary injunction ("PI") hearing on March 20, 2017, and rules on the Plaintiffs' PI Application.

## ANALYSIS

Dine Corp. and Nova Corp. are corporations organized under the laws of the Navajo Nation with their principal places of business in Pennsylvania. See Complaint for Declaratory and Injunctive Relief ¶¶ 4-5, at 2, filed January 9, 2017 (Doc. 1)("Complaint"). Nova Corp. employed

Fletcher, a citizen of New Mexico, as Vice President of Human Resources from 2014 to 2015, when she became a Dine Corp. employee "due to corporate restructuring." Complaint ¶¶ 36-37, at 5. Fletcher continued to work for Dine Corp. until June 9, 2016, see Complaint ¶ 38, at 5, when her employment was terminated because of corporate restructuring that "resulted in the elimination of Fletcher's position," PI App. at 4. Following her termination, on November 30, 2016, Fletcher initiated arbitration against the Plaintiffs before the AAA, asserting several causes of action arising from her employment with the Plaintiffs as well as from the termination of her employment. See Complaint ¶ 39, at 5.

The Plaintiffs initiated this action on January 9, 2017, seeking declaratory and injunctive relief. See Complaint ¶¶ 49-61, 6-8. Specifically, the Plaintiffs request (i) "a declaration that any claims arising from or related to Fletcher's employment are barred by DDC and NOVA's sovereign immunity"; (ii) "an injunction prohibiting Fletcher from proceeding with the arbitration that she filed on or about November 30, 2016 with the American Arbitration Association"; and (iii) "an injunction prohibiting Fletcher from asserting any claims in any forum arising form or related to her employment with DDC or NOVA." Complaint at 8. On January 17, 2017, the Plaintiffs applied for a preliminary injunction "barring Fletcher from proceeding with her claims before the AAA pending resolution of DDC and NOVA's Complaint[.]" PI App. at 1. The Plaintiffs asserted that, should Fletcher proceed with her claims before the AAA, "DDC and NOVA will suffer irreparable harm defending themselves in a forum that lacks jurisdiction over Fletcher's claims." PI App. at 1.

On March 7, 2017, the Plaintiffs moved for a TRO. See TRO App. at 1. The Plaintiffs admit that, at the time they filed the PI Application, they "were not in danger of imminent harm as the American Arbitration Association (AAA) had instituted an automatic 60 day stay as a result of the filing of this lawsuit." TRO App. at 1. That stay will now be lifted, they assert, "absent an order

from the Court enjoining Defendant Erin Fletcher from proceeding with her claim." TRO App. at 1. The Plaintiffs thus request that the Court "enter a temporary restraining order barring Defendant Erin Fletcher from proceeding with her claim before the AAA." TRO App. at 1.

For the reasons stated on the record at the hearing, and for the reasons articulated below, the Court grants the TRO Application.

### A.    REQUIREMENTS FOR PRELIMINARY RELIEF.

The requirements for the issuance of a TRO are essentially the same as those for the issuance of a preliminary injunction. See 13 J. Moore, Moore's Federal Practice ¶ 65.36(1), at 65-83 (3d ed. 2004). The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration. See Fed. R. Civ. P. 65(b). In both cases, however, injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. Leviton Mfg. Co., Inc. v. Nicor, Inc., 2007 WL 505796 (D.N.M.)(Browning, J.)(citing Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)). The Supreme Court and the United States Court of Appeals for the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can beheld." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). See Keirnan v. Utah Transit Auth., 339 F.3d 1217, 1220 (10th Cir.2003)("'In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits.'")(quoting Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986)).

To establish its right to preliminary relief under rule 65(b), a moving party must demonstrate that "immediate and irreparable injury, loss, or damage will result" unless the order is issued. Fed. R. Civ. P. 65(b). A moving party must "establish that he is likely to succeed on the merits, that he is

likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008)(citing Munaf v. Geren, 553 U.S. 674, 689-690 (2008); Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-312 (1982)).  The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis.  Nken v. Holder, 556 U.S. at 434.  It is insufficient, moreover, that a moving party demonstrate that there is only a "possibility" of success or harm.  Dine Citizens Against Ruining Our Environment v. Jewell, 839 F.3d 1276 (10th Cir. 2016)("Dine").  In Dine, the United States Court of Appeals for the Tenth circuit held that a relaxed test for preliminary relief is "inconsistent with the Supreme Court's recent decision in *Winter v. Natural Resources Defense Council*," which "overruled the [United States Court of Appeals for the] Ninth Circuit's application of a modified preliminary injunction test under which plaintiffs . . . could receive a preliminary injunction based only on a possibility, rather than a likelihood, of irreparable harm."  Dine, 839 F.3d at 1282 (citing Winter v. NRDC, Inc., 555 U.S. at 22).  The Tenth Circuit concluded that, although the standard overruled in Winter v. NRDC dealt with the irreparable-harm factor, "*Winter's* rationale seems to apply with equal force" to the likelihood-of-success factor.  Dine, 839 F.3d at 1282.  Accordingly, the Tenth Circuit held that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."  Dine, 839 F.3d at 1282.

      **B.**     **THE PLAINTIFFS ARE ENTITLED TO A TRO.**

As detailed below, the Court concludes that the Plaintiffs have met all four requirements for preliminary relief.  Accordingly, the Court will grant the TRO Application.

          **1.**     **The Plaintiffs are Likely to Succeed on the Merits.**

As to the likelihood-of-success factor, the Plaintiffs are entitled to tribal sovereign immunity

from suit, and are accordingly likely to prevail on the merits of their requests for declaratory and injunctive relief.  "The fact that Indian tribes enjoy limited sovereign immunity from suit is well-established."  Tenneco Oil Co. v. Sac & Fox Tribe of Indians, 725 F.2d 572, 575 (10th Cir. 1984).  See Michigan v. Bay Mills Native Indian Cmty, 134 S. Ct. 2024, 2030 (2014)("Indian tribes are 'domestic dependent nations' that exercise 'inherent sovereign authority.'").  Such tribal immunity "extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities."  Native Am. Distrib. v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288, 1292 (10th Cir. 2008).  The Supreme Court of the United States of America has specifically recognized that the Navajo Nation and its tribal entities are entitled to sovereign immunity.  See Kerr McGee Corp. v. Navajo Tribe, 471 U.S. 195, 201 (1985).  The Plaintiffs are corporations organized under the laws of the Navajo Nation and are therefore entitled to sovereign immunity from suit, including immunity from the claims that Fletcher seeks to bring in arbitration before the AAA.  Because the Plaintiffs have not waived their sovereign immunity, see generally Complaint; PI App. at 8-13, the AAA does not have jurisdiction over Fletcher's action, and the Court concludes that the Plaintiffs are likely to succeed on the merits of their requests for declaratory and injunctive relief.

**2.  The Plaintiffs Will Be Irreparably Harmed Absent a TRO.**

Preliminary relief primarily functions to preserve the status quo.  See RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009).  This is particularly true in the context of a TRO, which seeks to prevent "immediate and irreparable injury, loss, or damage" that may result before a court has time to resolve an application for a preliminary injunction.  Fed. R. Civ. P. 65(b).  Here, absent a TRO, the Plaintiffs will suffer irreparable injury, "because they will incur substantial inconvenience, unrecoverable expenses, and delay in adjudicating claims in a forum that plainly lacks jurisdiction to hear them."  PI App. at 14-15.  These harms are irreparable, because AAA lacks

jurisdiction over the Plaintiffs, and thus any arbitration proceedings would force the Plaintiffs to incur costs and burdens to defend themselves from a suit from which they are immune in the first place.  See, e.g., Kerr-McGee Corp v. Farley, 88 F. Supp. 2d 1219, 1233 (D.N.M. 2000)(Vazquez, J.)(finding irreparable harm based on similar considerations where a tribal court had no jurisdiction over the parties).  Thus, the Court concludes that, absent a TRO, the Plaintiffs will suffer irreparable injury.

### 3. The Balance of Equities Tips in the Plaintiffs' Favor.

The third preliminary relief factor requires the Court to determine whether the "balance of equities" tips in the movant's favor.  Winter v. NRDC, Inc., 555 U.S. at 20 (citations omitted).  The Plaintiffs contend that the balance of equities weighs in their favor, because they will "face certain harm if Fletcher is not enjoined from moving forward with her claims before the AAA," while Fletcher "will suffer no harm if a preliminary injunction is issued." PI App. at 15.  The Court agrees with this analysis.  The Court has already concluded that the Plaintiffs will suffer irreparable harm absent a TRO, because they be forced to expend time and resources defending themselves from suit.  Fletcher, by contrast, will suffer no cognizable harm if her AAA proceeding is stayed a bit longer.  The Plaintiffs correctly note that, should the Court ultimately find in Fletcher's favor and lift the injunction, she "will be able to simply pick up where she left off." PI App. at 15.  Accordingly, the Court concludes that the balance of equities tips in the Plaintiffs' favor.

### 4. The Public Interest Would be Served by a TRO.

The Court must finally determine whether preliminary relief "is in the public interest." Winter v. NRDC, Inc., 555 U.S. at 20 (citations omitted).  As the Tenth Circuit has recognized, there is a "paramount federal policy that Indians develop independent sources of income and strong self-government." Seneca-Cayuga Tribe v. State ex rel. Thompson, 874 F.2d 709, 716 (10th Cir. 1989).

Allowing Fletcher to proceed with arbitration against the Plaintiffs when they are immune from suit would damage Navajo tribal sovereignty and the public interest in Navajo "strong self-government." Seneca-Cayuga Tribe v. State ex rel. Thompson, 874 F.2d at 716.  The Court concludes that this interest outweighs any marginal public interest that may be advanced by allowing Fletcher to immediately proceed with arbitration before the AAA.

**IT IS ORDERED** that: (i) the Plaintiffs' Application for Temporary Restraining Order, filed March 7, 2017 (Doc. 15), is granted; and (ii) Defendant Erin Fletcher is enjoined from proceeding with arbitration against Dine Development Corp. and Nova Corp. before the American Arbitration Association until the Court holds a hearing on March 20, 2017, and rules on the Plaintiffs' Application for Preliminary Injunction, filed January 17, 2017 (Doc. 3).

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jennifer A. Noya
Jeremy K. Harrison
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Erin Fletcher
Taylorsville, Utah

    *Plaintiff Pro Se*